

4
Jason S. Buckingham, CSBN 236147
940 Adams Street, Suite S
Benicia CA 94510
Tel.: (707) 745-2200
Email: jason@jsb-law.com
Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>Mark P. Asercion,<br><br>       Debtor.<br><br>Address: 483 Lori Drive<br>      Benicia CA 94510<br><br>Last 4 digits of Soc. Sec. No(s).: 8981 | Case No. : 10-26123<br>Chapter : 7<br>DCN   : JSB-001<br><br>**DEBTOR'S MOTION TO REOPEN CASE**<br>**[11 U.S.C. § 350; FRBP Rule 5010]**<br>**[No Hearing Required – LBR 5010-1]** |

  Debtor, through counsel, requests that the above-captioned case be reopened under 11 U.S.C. § 350(b) in order to accord relief to the Debtor and in support thereof avers as follows:

  1. Debtor filed for bankruptcy under Chapter 7 of the Bankruptcy Code on March 12, 2010, and received a discharge under 11 U.S.C. § 727 on June 28, 2010.

  2. Among the debts listed in Debtor's petition and discharged in this bankruptcy was a debt in the amount of $4,853.65 to creditor Fremont Villas Homeowners Association ("Fremont Villas") for pre-petition HOA dues.

  3. On April 7, 2010, Debtor indicated his intention to surrender the collateral condominium unit that secured the pre-petition debt to Fremont Villas by filing a Statement of Intention with the court, Document Number 10 on the docket, and serving said document upon secured creditors, including Fremont Villas, and its agents Cornerstone Community Management ("Cornerstone"), and Cimarron Trustee Services ("Cimarron").

////

4. Fremont Villas, Cornerstone, and Cimarron were among the parties included on the court's master mailing list, and as such, received notice of the discharge from the court.

5. Commencing on or about June 15, 2010, Debtor attempted to commence payments to Fremont Villas for post-petition HOA dues. Specifically, on June 15, 2010, Debtor paid $924.51 for the April 2010 through June 2010 HOA dues, late charges, and interest.

6. From the date the petition in this case was filed, Debtor did not receive regular billing statements from Fremont Villas for post-petition HOA dues. Instead, Debtor only received past due statements for the previous month's HOA dues.

7. Beginning in July, 2010, Debtor received communications from Cornerstone, which represented that it was collecting the post-petition HOA dues for Fremont Villas.

8. Beginning in October 2010, Debtor communicated with Cimarron on several occasions regarding the post-petition HOA dues, because Cimarron represented that it would be collecting HOA dues for Fremont Villas.

9. On or about October 20, 2010, during a telephone conversation, Cimarron represented to Debtor that Debtor owed delinquent HOA dues in the amount of $11,103.96. Debtor believes the amount that Cimarron claimed was due included pre-petition HOA dues, because the amount claimed is grossly disproportionate to the few months of post-petition HOA dues he should have owed.

10. Debtor informed Cimarron at least twice that he believed he was only obligated to pay post-petition HOA dues.

11. Cimarron demanded that Debtor pay the entire $11,103.96 by entering into a forbearance agreement drafted by Cimarron, under the pretext that Cimarron would forgo foreclosure proceedings on the condominium Debtor previously surrendered to secured creditors.

12. Cimarron never disclosed to Debtor what amount of pre-petition HOA dues, if any, were included in its total.

13. Cimarron never disclosed to Debtor that he had no obligation to pay any debt that had been discharged in this bankruptcy case, including any pre-petition HOA dues.

14. Debtor never agreed to waive his right to be free from personal liability for pre-petition HOA dues, as provided by the discharge entered in this case.

15. Debtor never requested that Cimarron halt a pending foreclosure of the condominium. To the contrary, Cimarron had already received written notice of Debtor's intent to surrender.

16. On or about October 25, 2010, Cimarron sent Debtor its form of forbearance agreement, along with a cover letter which states that Cimarron was attempting to collect a debt from Debtor.

17. Cimarron never disclosed to Debtor that, by entering into the forbearance agreement, Cimarron and Fremont Villas would delay or suspend foreclosing. As noted herein, Debtor surrendered the collateral securing Fremont Villa's debt. As such, any delay of a foreclosure actually exposed Debtor to additional liability for continuing post-petition HOA dues.

18. The forbearance agreement provides that Debtor would pay Cimarron an initial deposit of $500.00, and monthly payments of $825.00 for twenty-four (24) months.

19. By the terms of the forbearance agreement, $291.33 would be applied to the regular post-petition HOA dues for each month, and the remainder of each monthly payment ($533.67) would be applied to the alleged arrears, interest, late charges, and costs of collection. The non-dues total of payments over 24 months is $12,808.08, plus the initial deposit of $500.00, for a grand total of $13,308.08 to be paid on an alleged $11,103.96 debt.

20. Debtor paid the initial deposit of $500.00 on November 30, 2010. Thereafter, Debtor paid Cimarron as follows: December 8, 2010: $1,200.00; January 13, 2011: $825.00; February 14, 2011: $825.00; March 14, 2011: $825.00; April 14, 2011: $825.00; May 13, 2011: $825.00; for a total of payments under the forbearance agreement of $5,825.00.

21. On June 28, 2011, Debtor's counsel notified Cimarron in writing that Debtor believed the Cimarron forbearance agreement violated the discharge in this case, and further requested an accounting of all sums owed by Debtor and the application of all payments made under the forbearance agreement.

22. To date, Cimarron has provided no accounting. Instead, on June 30, 2011, Cimarron replied to the June 28 notice in writing and asserted that its forbearance agreement was the equivalent of a Reaffirmation Agreement. Cimarron further asserted that its forbearance agreement did not have to comply with the requirements imposed upon a Reaffirmation because, in the words of Cimarron's so-called legal advisor, "the agreement was entered into long after the discharge was obtained, thus

Debtor's Motion to Reopen Case

making the requirements for court approval non-applicable." Cimarron also asserted that Debtor "voluntarily" agreed to pay pre-petition HOA dues so that Cimarron would put off a pending foreclosure auction.

23. Debtor contends that Cimarron's and Fremont Villas' acts constitute knowing, willful, and wanton violations of the discharge entered in this case. Further, Cimarron's refusal to provide an accounting of payments received from Debtor evinces a contemptuous attitude towards this court's authority, inasmuch as the discharge entered in this case forbids collection of pre-petition HOA dues.

24. Debtor is prepared to bring a motion against Fremont Villas and Cimarron before this court for contempt under 11 U.S.C. § 105 and for violation of the discharge injunction applicable to this case under 11 U.S.C. § 524(a). Further, Debtor's motion will provide the court with documents that substantiate the various acts of contempt and violations of the discharge described herein.

**WHEREFORE**, the Debtor requests that this case be reopened to allow Debtor to file a motion against Fremont Villas and Cimarron for contempt under 11 U.S.C. § 105 and for violation of the discharge injunction applicable to this case under 11 U.S.C. § 524(a).

Respectfully submitted,


Dated: October 6, 2011                         /s/ Jason S. Buckingham
                                               Jason S. Buckingham
                                               Attorney for Debtor